hWALTZER, Judge.

STATEMENT OF THE CASE

Appellant was charged by bill of information with simple burglary of a vehicle. He was found guilty by the jury and was sentenced to serve twelve years at hard labor. Defendant was adjudicated a fourth offender and resentenced to life imprisonment. Defendant appeals.

STATEMENT OF THE FACTS

On May 11, 1991, defendant Melvin Ray-ford was observed at the corner of LaSalle and Tulane by Byron Collins, a security officer for Tulane Medical Center. Collins observed the defendant pacing suspiciously back and forth near a white Dihatsu vehicle. When the defendant broke a rear window of the vehicle, Collins used his radio to alert the other officers. He maintained radio contact, describing the defendant and the defendant’s activities. Collins observed the defendant put a large umbrella on the ground and then go through the vehicle with his legs hanging outside. Collins continued to observe the defendant as he left the area, until two other Tulane security officers caught up with the defendant and verified his identity. Collins then left his position on the seventh floor of the Medical Center parking lot, came down the elevator, and resumed his pursuit of the defendant, who was discarding papers and a checkbook as he walked briskly away from the vehicle. The other officers detained the defendant at Tulane Avenue between South Robertson and Villere. Collins gathered up the items discarded by the defendant and proceeded to join the others.
The defendant attempted to stab his left forearm with a screwdriver before he could be handcuffed. He was removed to the security office at the medical center, where he was^combative and banging his head against the bulletin board. N.O.P.D. was called, then recalled when the defendant became hostile and violent.
The registered owner of the vehicle was comatose and on his deathbed in the hospital at the time of the offense. The owner had given his friend, Robert Dixon, use of the vehicle. Dixon identified the receipt for tires and the proof of insurance, which had been in the glove compartment, but which were found in the defendant’s back pocket. Dixon also identified his own checkbook, which Officer Collins retrieved from the street after it was discarded by the defendant. Dixon fur *1135 ther testified that the defendant had not been given permission to enter the vehicle.
The defendant testified that the officers were chasing the man who actually broke into the vehicle, but the man got away. He farther testified that the officers then stopped him because he was seen talking to the perpetrator. The defendant farther testified that, when the officers found out he had a record, they decided to pin this charge on him.

DISCUSSION

Initially we note that a review of the record reveals no errors patent upon the face of the record.

ASSIGNMENT ONE

By this assignment the appellant avers that the trial court erred by its denial of the motion for mistrial when a witness referred to other crimes evidence. As noted by the appellant, LSA-C.Cr.P. art. 770(2) requires a mandatory mistrial, upon motion of a defendant, when the judge, district attorney or a court official, within the hearing of the jury, refers to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible. LSA-C.Cr.P. art. 771(2) provides for those eases in which prejudicial but irrelevant or immaterial remarks are made by a witness or person other than the judge, district attorney, or a court official, regardless of whether or not the remark is within the scope of .Article 770. In those cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard the remark. On motion |3of the defendant, the court may grant a mistrial, if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. LSA-C.Cr.P. 771.
The particular remark in this case occurred during cross-examination of the State’s primary witness, security guard Byron Collins. Defense counsel was questioning Officer Collins about how the defendant happened to begin beating his own head on the bulletin board of the security office. The last question asked by defense counsel was: “[D]id you all ask him any questions or anything, he just went off?” Officer Collins then proceeded to give a lengthy answer to defense counsel, as to what he and the other officers did in the security office following the defendant’s arrest, as follows:
Well, we tried to get information from Mr. Rayford and Mr. Rayford was somewhat irate and unhappy that he was detained so the profanity that he was using just delayed the process somewhat, we found, I believe, a hospitalization card or whatever with his name on it and that’s how we were able to give the information over to our dispatcher and we keep somewhat of a file cabinet on different people that we stop in the area, from, you know, crime stats or whatever and we called it over and the dispatcher had no information per se on Mr. Raymond, but the information we got from the name check through NCIC, whatever it’s called, let us know that Mr. Rayford had been in some trouble in the past. (Tr. 39)
Defense counsel moved for a mistrial at the conclusion of the witness’s testimony, after the jury left the courtroom for the lunch recess. The trial court refused to consider the motion because it was not made contemporaneously with the testimony. In addition, the court noted that the evidence was brought out in cross-examination, as opposed to having been elicited by the State. Finally, the court noted that the officer did not refer to any specific crimes.
Defense counsel posed nearly twenty questions after the allegedly objectional comment before he moved for a mistrial. It would thus have been difficult, if not impossible, to admonish the jury after such a delay. While we find that the remark was not of such a nature as to preclude a fair trial and thus this assignment of error is without merit, we further note that officer Byron Collins is not a court official under the article.
As noted by this court in State v. Harris, 383 So.2d 1 (La.1980), ordinarily a police officer is not classified as a court official under the provisions of LSA-C.Cr.P. art. 770:
14“This Court has generally recognized that a police officer’s unsolicited, unresponsive reference to another crime by the *1136 defendant is not the comment of a court official under Article 770. Absent a showing of a pattern of unresponsive answers or improper intent by the police officer or prosecutor such comments would not fall within the purview of Article 770. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Martin, 376 So.2d 300 (La.1979).” Id. at 9.
Where, as here, the testimony was elicited by the defense, there was no improper intent on the part of the prosecutor. Likewise, there was no pattern of unresponsive answers by the officer or other showing of improper intent by the witness. Rather, the witness appeared to be merely explaining the ■ attempts to obtain information on the subject in his temporary custody. The remark does not fall within the purview of Article 770.
Even under Article 771, the remark is not prejudicial. While the witness did testify that the defendant had been in trouble in the past, he did not refer to any specific crime. Considering the overwhelming evidence against the defendant in this case, the witness’s remark did not affect the verdict. This assignment has no merit.

ASSIGNMENT TWO

By this assignment, the appellant avers that the trial court erred in finding the defendant to be a fourth felony offender and in imposing a life sentence under LSA-R.S. 15:529.1. As to the conviction as a fourth offender, the appellant argues that the evidence was insufficient as to the conviction in ease number 331-932 for possession of cocaine. The appellant admits that the State submitted certified documents which prove that a Melvin Rayford was charged with possession of cocaine which offense occurred on December 28, 1988, and that he was convicted on June 14, 1990. However, the appellant argues that the State has not proved that the Melvin Rayford convicted on June 14, 1990 is the same person convicted on the instant offense. He notes that Detective Solis, the State’s fingerprint expert, admitted that the packet for the cocaine conviction did not contain a set of fingerprints which matched the fingerprints of the defendant.
| r>Although the bill of information contains only the fingerprints of a eodefendant in the case, State’s exhibit one, submitted at the hearing, contains an arrest register for a Melvin Rayford, from the arrest in that case, which matches the fingerprints of the defendant. The arrest register is linked with case number 331-932 not only by name of defendant, date of offense, type of offense, and defendant’s date of birth, but also by the defendant’s file number F# 435689, which is on both the arrest register and the docket master. The State’s proof that the defendant is the same person previously convicted of cocaine on June 14, 1990 in case number 331-932 is sufficient.
By this assignment the appellant additionally argues that the trial court erred in imposing a sentence without consideration of the new sentencing guidelines. LSA-C.Cr.P. art. 881.1 requires that the defendant timely file a motion to reconsider the sentence and to set forth the specific grounds upon which the motion is based in order to preserve the claim for appeal. The appellant argues that although trial counsel made no written motion for reconsideration of the sentence, his oral objection should be considered an oral motion for reconsideration. The Louisiana Supreme Court has accepted this reasoning, but limited the review to the specific grounds alleged in the oral objection. State v. Caldwell, 620 So.2d 859 (La.1993); State v. Mims, 619 So.2d 1059 (La.1993). See also State v. Davis, 633 So.2d 822 (La.App. 4th Cir.1994). Trial counsel in the instant ease said only, “I object.”
A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). The reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved *1137 for the most egregious violators of the offense so charged. State v. Brogdon, supra; State v. Quebedeaux, 424 So.2d 1009 (La.1982); State v. Guajardo, 428 So.2d 468 (La.1983).
The appellant further notes that the appellant’s sentence could be reviewed for failure of the trial court to comply with the guidelines on the grounds that trial counsel was | gineffective. Trial counsel failed to move for reconsideration of the statutory maximum sentence and, considering that the record is complete as to that issue, there is no reason it need be deferred for post-conviction review. The only way to determine if counsel’s failure to so move was prejudicial to the defendant would be to review the sentence. Accordingly, the appropriateness of the sentence is considered below.
Following the multiple bill adjudication the trial court sentenced the defendant as follows:
For the record in this matter, the Court has reviewed the provisions of Article 894.1, the- sentencing guidelines. The Court specifically believes that, based upon the defendant’s prior record as demonstrated in the quadruple offender bill that the State has proven up, plus the fact that this Court also, besides the conviction in the instant case the Court has on its docket, another simple burglary case and an attempted simple burglary case, two different misdemeanor eases, there would be an undue risk that during a period of suspended sentence he would commit other crimes. He has demonstrated that this is what he does, that that’s what he has chosen for a living. He is the classic example of the term “career criminal”. Nobody forced him into his career in crime, he chose it for himself. And he does a pretty good job of it based upon his prior record.
The Court believes he is definitely in need of correctional treatment in a custodial environment. And the Court believes, based upon his prior record, he has demonstrated that any time he is on the street, anytime he is in the community, he’s going to do only one thing, and that’s commit. crimes, most of them stealing, and burglarizing from other people who are trying to make a life in this city.
Mr. Rayford, you, and people like you, are killing this city. Nobody wants to live here when the things they work hard for are broken into and stolen by people like you, and by you, based on your prior record.
The Court has reviewed the mitigating circumstances. The Court doesn’t believe any of them apply. The Court believes Mr. Rayford has chosen this life for himself, and now he’s going to get the benefit of the consequences of his choice.
In State v. Smith, 639 So.2d 237 (La.1994), the Louisiana Supreme Court stated:
we ... now hold that: (1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines. (At 240).
|7We find that the explanation given by the trial judge for sentencing was sufficient. We further find that the trial court judge considered the Guidelines, did not abuse his complete discretion in rejecting them and imposed a sentence which is not constitutionally excessive.
For the reasons discussed, defendant’s conviction and sentence are affirmed.

AFFIRMED.