788 So.2d 515 (2001)
STATE of Louisiana
v.
Tyrone WILLIAMS.
No. 2000-KA-0011.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 2001.
*520 Harry F. Connick, District Attorney, Orleans Parish, Val M. Solino, Assistant District Attorney, Orleans Parish, New Orleans, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS SR.
MURRAY, Judge.
Tyrone Williams was convicted by a jury of possession of cocaine with intent to distribute, a violation of La. R.S. 40:967 A, and pled guilty, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), and North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to attempted possession of a firearm by a convicted felon, a violation of La. R.S. 14:(27) 95.1. He was adjudicated a third felony offender as to the cocaine charge, and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence, with a concurrent sentence of four years on the firearms charge. Mr. Williams now appeals his convictions, multiple offender adjudication and sentences.[1] We affirm for the reasons that follow.

FACTS:
Police Detective Adam R. Henry testified that he participated in the arrest of defendant on November 18, 1997, at 1554 Lafreniere Street. He and Officer Michael Harrison, armed with a search warrant for that residence, set up a surveillance some fifteen to twenty feet away to verify that defendant was home and was still selling narcotics. The officers observed approximately eleven transactions, but Det. Henry described only three, and a possible fourth. In the first, a blue van parked in front of the residence, and a male passenger jumped out, ran up to the porch, and knocked on the door. Defendant exited and briefly conversed with the male before returning inside. The defendant reappeared and handed the male something, and the male reentered the van and drove away. The second transaction presented essentially the same scenario, but Det. Henry noted that the suspected buyer and the defendant exchanged money before defendant went inside, returned, and handed the buyer something, who then drove away. The third transaction involved a female who knocked on the door. Subsequently, a male entered the residence, staying for only one to two minutes before leaving. One of these individuals arrived at the residence in a red car. Det. Henry testified that based on his experience in making undercover narcotics purchases, as well as in conducting numerous surveillances, he could easily figure out what the defendant was doing. Det. Henry also testified that he had no doubt that defendant was the person involved in the hand-to-hand transactions he witnessed, as *521 the area of defendant's house was well illuminated by a front porch light, a street light, and light from a gym across the street.
Det. Henry was qualified as an expert, and testified that test tubes such as the one seized from an entertainment center at defendant's residence are used in the production of crack cocaine. The test tube was in a brown paper bag. He also testified that a box of sandwich bags was seized because they are commonly used for packaging cocaine, in the corners, which are then tied off and cut. Four bags of powdered cocaine and two bags of crack cocaine packaged in this manner were also seized from defendant's residence. Finally, Det. Henry identified a .357 Magnum revolver that had been discovered underneath a pillow in defendant's residence.
Detective Paul Toye assisted in the execution of the search warrant at defendant's residence on November 18, 1997. He recovered two bags of crack cocaine from the top of a dresser in defendant's bedroom, along with two hundred and thirty-six dollars and two beepers. Also recovered were two pieces of documentation with defendant's name and the address of 1554 Lafreniere.
Sergeant Patrick Brown also assisted in the execution of the search warrant at defendant's residence. He was the first person to enter, whereupon he observed defendant running toward the rear of the residence. As defendant entered the bathroom, he threw something with his right hand. Sgt. Brown restrained him, and Det. Jeff Robertson retrieved one piece of plastic bag containing cocaine from the top of the toilet tank, one piece from the toilet bowl itself, and two pieces from the floor next to the toilet. Sgt. Brown later recovered the revolver from underneath a pillow on a bed. Sgt. Brown stated on cross examination that they knocked on the door of the residence and announced their presence, but after hearing activity inside, used a ram to force their way in.
Detective Michael Harrison testified similarly to Det. Henry, as he also participated in the surveillance of defendant's residence immediately prior to the execution of the search warrant. Det. Harrison testified that he observed a red car pull up. The passenger exited and knocked on defendant's door. Defendant came outside, and the two men talked for a minute. The male handed defendant some currency, and defendant went inside. Defendant returned, handed the male an object, and the male returned to the red car, which drove off. Det. Harrison had no doubt that defendant was the person he observed engage in this transaction.
Charlene Williams, defendant's younger sister, testified that she was present when police arrested her brother. She said police removed a bag from the residence, one that she had placed in the residence for an ex-boyfriend who, after work, usually gave her a bag containing his "work clothes and things." She put the bag on a book shelf. She claimed defendant was not at home when she took the bag into the residence and, to the best of her knowledge, he did not know what was inside of the bag. Ms. Williams testified that her sister was driving a burgundy-colored car at the time defendant was arrested. She did not see police confiscate any drugs from the bathroom that evening, or from the dresser, but claimed the drugs were seized from the brown paper bag she had taken into the residence for her boyfriend. Ms. Williams admitted on cross examination that she did not know where police found drugs in the residence. She said on redirect examination that there was no porch light at the residence.
Earline Reynolds, defendant's cousin, was present at defendant's residence on *522 November 18, 1997. She observed Charlene Williams' boyfriend hand Charlene a bag, and saw her put the bag on an entertainment center in the living room. She saw no drugs in the residence, nor did she observe any drug transactions there that day.

ERRORS PATENT:
A review of the record reveals no errors patent.

COUNSEL'S ASSIGNMENT OF ERROR NO. 1; PRO SE ASSIGNMENT OF ERROR NO. 2:
Mr. Williams argues that the trial court erred in denying his motion to suppress the evidence seized pursuant to the search warrant, as the search warrant was based on stale information pertaining to one sale allegedly observed by a confidential informant, and on "incomplete" information.
In State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, Casey v. Louisiana, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62, the Louisiana Supreme Court stated:
The general rule is that probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." La.C.Cr. P. art. 162; State v. Johnson, 408 So.2d 1280, 1283 (La.1982).
99-0023 at p. 3-4, 775 So.2d at 1027-28.
The defendant bears the burden of proving that evidence seized pursuant to a search with a warrant should be suppressed. La.C.Cr.P. art. 703(D). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Devore, 00-0201, p. 6 (La.App. 4 Cir. 12/16/00), 776 So.2d 597, 600-601; State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. The task of a reviewing court is simply to ensure that the magistrate issuing the warrant had substantial basis for concluding that probable cause existed. State v. Johnson, 00-2406, p. 4 (La.1/12/01), 778 So.2d 546, citing Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence admitted at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Counsel for Mr. Williams argues that the affidavit or order to search defendant's residence "has conflicting information or signatures." Counsel does not point to any particular conflict, but instead claims that in a July 20, 1999 hearing "the trial court acknowledge[d]" that an alteration or discrepancy in the signatures on the search warrant application "had been established" at a prior hearing. However, defendant was sentenced on July 20, 1999, and the transcript of that sentencing contains no such statement by the trial court. At a July 20, 2000 hearing, the trial court referred to a prior hearing at which defendant raised the signature issue, and indicated that the matter had been resolved. The prior hearing referred to was one held on May 24, 1999, at which defendant claimed that the judge's signature on the search warrant left at his residence by police differed from the judge's signature on the search warrant offered in evidence at the motion to suppress hearing and at trial. The trial judge examined the two *523 documents and opined that the one defendant claimed was left at his residence had "the same identical signature" as the one in the record. Both documents are contained in the record on appeal, and both appear to have been signed by the same judge. However, each is obviously an original, signed by the judge separately. We therefore reject counsel's contention that the warrants contain an "alteration or discrepancy" that invalidates them.
Mr. Williams next argues that the information in the application for the search warrant failed to establish probable cause to believe that contraband would be found at his residence. The application submitted by Det. Henry is in the record. It reflects that a controlled purchase of cocaine was made with marked police funds by a trusted, confidential informant who had previously told the detective that there was a cocaine distribution outlet operating out of the residence at 1554 Lafreniere Street.
In the application, Det. Henry states that the informant is reliable, and sets forth the reasons for that conclusionthe informant had provided information in the past resulting in arrests and convictions of individuals engaged in narcotics violations and other crimes. Det. Henry also presents the basis of the informant's knowledgethe informant had personally observed cocaine being sold from the location within the past twenty-four hours. Finally, Det. Henry states that he has tested the informant's veracity by having him make a controlled purchase of cocaine from the location, which purchase itself provided a strong independent basis for a finding of probable cause.
Defendant argues that the information in the search warrant application was stale, as Det. Henry did not apply for the search warrant until November 18, fifteen days after first receiving information of ongoing cocaine sales at defendant's residence, and five days after the controlled cocaine purchase. "Staleness" is an issue when the passage of time makes it doubtful that the contraband sought in the warrant will be at the place where it was observed. Casey, supra.
In State v. Stewart, 92-2536 (La.App. 4 Cir. 12/15/94), 648 So.2d 15, a reliable informant told a police officer on July 14, 1987 that a black male known as "Crippled Leo" was selling heroin from a particular address. The officer arranged for the informant to purchase heroin from "Crippled Leo" on that date, and subsequently obtained a search warrant on July 16, 1987. The warrant was not served until July 24, 1987. This court held that the above information was sufficient to warrant a man of reasonable caution to believe that heroin would be found on the premises "eight days" after the issuance of the warrant and ten days after the controlled purchase.
In the instant case, the reliable confidential informant told police on November 3 that cocaine was being sold from the residence on a twenty-four hour (an "ongoing") basis, and that he/she had personally observed cocaine being sold from the residence within twenty-four hours of that date. Ten days after observing cocaine sales at the residence, the confidential informant made a controlled purchase of cocaine from that same residence. Therefore, accepting the information given by the informant as to ongoing cocaine sales, which information was verified by the controlled purchase ten days later, the trial judge had probable cause to believe that five days after the controlled purchase, cocaine would also be found at the residence.
Mr. Williams' counsel also claims that the affidavit was misleading in that Det. Henry did not state defendant's full *524 name, or mention in the affidavit that he had defendant's photograph or defendant's criminal record in his possession. Det. Henry testified at the hearing on the motion to suppress that he knew defendant's full name on November 3, and had a photograph of defendant at the time of the controlled purchase. Det. Henry said nothing about knowing defendant's criminal record at the time of making the application for the search warrant. Defendant cites La.C.Cr.P. art. 203, which provides, among other things, that an arrest warrant shall state the name of the person to be arrested, if known. However, this provision applies to arrest warrants, not search warrants. There is no requirement that an application for a search warrant contain the full name, photograph or criminal history of a person suspected of residing at the place where contraband is believed to be.
Therefore, the trial court properly denied the motion to suppress the evidence.

COUNSEL'S ASSIGNMENT OF ERROR NO. 2:
By this assignment, Mr. Williams claims the trial court erred in denying his motion to recuse the district attorney's office, as well as two judges, both former assistant district attorneys, who presided over various proceedings during his prosecution. Defendant filed a "pro se" motion to recuse the district attorney and two judges on May 24, 1999, which was denied that same date. Only the firearm charge was pending at the time the motion to recuse was filed. According to La.C.Cr.P. art. 674,[2] the motion was untimely as to the cocaine offense because it was filed after defendant's conviction on that offense and after his adjudication and sentence as a third-felony habitual offender based on that conviction.

The Motion to Recuse the District Attorney
La.C.Cr.P. art. 681 provides that a motion to recuse a district attorney shall be filed in accordance with La.C.Cr.P. art. 521. Under article 521, pretrial motions shall be filed within fifteen days after arraignment, unless a different time is provided by law, or fixed by the court at arraignment. Article 521 directs that, upon a written motion and a showing of good cause, the court shall allow additional time to file pretrial motions.
Defendant was arraigned on June 24, 1998, and did not file his motion to recuse the district attorney until May 24, 1999. Thus, the motion was untimely on its face. Beginning with his arraignment, and at all times thereafter, defendant was represented by counsel. However, defendant did not allege or show good cause why he should have been allowed to file the motion untimely. A motion to recuse the district attorney which is filed more than fifteen days after arraignment is properly denied where the defendant fails to allege good cause to permit the late filing. State v. Rose, 609 So.2d 1113, 1116-1117 (La.App. 2 Cir.1992). Because defendant has failed to show good cause why his untimely motion should have been considered, we cannot say that the trial court erred in denying the motion.

The Motion to Recuse the Trial Judges
The motion to recuse the trial judges was also denied on the same date it was filed, May 24, 1999. However, on May *525 26, 1999, this court granted a writ application as to the motion to recuse the presiding judge only, and ordered the trial court to conduct a hearing on that issue before trial.[3] A June 1, 1999 minute entry reflects that in response to this court's writ order, the trial court mailed this court a copy of a minute entry from May 24, 1999, presumably as evidence that a hearing had been held. The transcript from May 24, 1999 reflects that counsel for defendant informed the court that defendant had no evidence to present on the motion, but that it was based solely on the fact that the judge previously had been employed by the district attorney's office. Defendant pleaded guilty to the firearm charge on July 20, 1999, reserving his right to appeal pretrial errors.
La.C.Cr.P. art. 671 sets forth the grounds for recusation of a judge:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
These grounds are exclusive, not illustrative. In re Lemoine, XX-X-XXXX, pp. 10-11 (La.1/14/97), 686 So.2d 837, 843, on rehearing XX-X-XXXX (La.4/4/97), 692 So.2d 358. The party desiring to recuse a trial judge shall file a written motion assigning the ground for recusation. La.C.Cr.P. art. 674. If a valid ground for recusation is set forth in the motion for recusation, the judge shall either recuse himself, or, in a court having two or more judges, as is the case in the instant matter, refer the motion to another judge of that court. La.C.Cr.P. art. 674; 675. A trial court has discretion to determine if there is a valid ground for recusation set forth in the motion. State v. Williams, 96-1587, p. 5 (La.App. 4 Cir. 4/16/97), 693 So.2d 249, 252. In addition, under C.Cr.P. art. 672, a judge may recuse himself, whether or not a motion has been filed, in any case in which a ground for recusation exists. Defendant impliedly argues that both Judges Buras and Hangartner should have recused themselves of their own accord.
On appeal, defendant's argument for recusal is limited to the ground in C.Cr.P. art. 671(A)(3), which he claims is applicable because of the judges' former employment as assistant district attorneys.
La.C.Cr.P. art. 671(A)(3) has been strictly interpreted. In State v. Lemelle, 353 So.2d 1312 (La.1977), the defendant, Lemelle, was charged in January 1975 with armed robbery, together with Sylvester Jackson. L.E. Hawsey, Jr., then a practicing attorney, was appointed to represent Jackson, and represented Jackson when Jackson entered a plea of guilty *526 approximately one month later. Thereafter, L.E. Hawsey, Jr. was elected a district court judge. Almost two years later, in February 1977, Judge Hawsey presided over the trial of Lemelle. On the morning of the third day of trial, the defendant filed a motion to recuse Judge Hawsey under La.C.Cr.P. art. 671(A)(3). An impartial judge hearing the motion to recuse found that because Judge Hawsey had no recollection of his appointment as Jackson's attorney, or of the case, no grounds for recusation had been proven. The Louisiana Supreme Court rejected that finding, stating:
[La.C.Cr.P. art. 671(A)(3)], when read with the mandatory "shall" used in the opening paragraph of article 671, requires recusal upon the mere showing of employment in the cause. There is no reference to whether that employment was of such consequence as to prejudice the judge, nor is there any requirement that the defendant show actual prejudice. The article simply and clearly states that the trial judge shall be recused when he has been employed as an attorney in the cause. The legislature, by providing for a mandatory recusal in this situation, has apparently concluded that the appearance of impartiality, as well as impartiality itself, outweighs the inconvenience caused by the recusal of the trial judge. Therefore, because of his prior representation of a defendant jointly charged with the same offense, Judge Hawsey should have been recused upon the motion of the defendant.
353 So.2d at 1314. Thus, strictly interpreting La.C.Cr.P. art. 671(A)(3), insofar as it applies to the facts of the instant case, the statute requires only a showing that the judge was previously associated with an attorney employed in the cause. Finding no jurisprudence on this precise issue and adhering to a strict interpretation of article 671(A)(3), we conclude that, for purposes of that provision, assistant district attorneys operating under one district attorney are associated with each other.
Judge Buras acknowledged at the hearing on the motion to recuse that she had been employed by the district attorney's office before assuming the bench. Although the record does not reflect that Judge Pro Tempore Hangartner had been employed by the district attorney's office prior to assuming the bench, it can be noticed that he was. There is no evidence in the instant case that either Judge Pro Tempore Hangartner or Judge Buras had any direct connection with defendant's case while employed by the district attorney's office. However, facts in the record indicate that, more probably than not, each judge was employed as an assistant district attorney at some point while defendant's case was being considered for prosecution by the district attorney's office, the period from November 18, 1997 (the date of arrest) to June 18, 1998 (the date of indictment). In addition, it is more probable than not that Judge Buras was employed by the district attorney's office both at the time defendant was charged and at the time Judge Pro Tempore Hangartner presided over defendant's July 17, 1998 motion to suppress hearing.
Accordingly, just as in Lemelle, Judge Buras should have recused herself upon the timely filed May 24, 1999 written motion of defendant. Although Judge Buras stated for the record that she had no recollection of defendant or his case, and there is no suggestion of any bias, prejudice or personal interest on her part, those factors are irrelevant for purposes of a motion to recuse based on La.C.Cr.P. art. 671(A)(3). As previously discussed, defendant's motion to recuse had no bearing on Judge Buras' actions with regard to defendant's conviction and sentence for possession of cocaine, which occurred before the *527 motion was filed; nor did the motion have any bearing upon Judge Pro Tempore Hangartner, who had left the bench long before the motion was filed.
We next address whether the apparent error in Judge Buras' failing to recuse herself can be considered harmless. In Lemelle, after finding error in the failure to recuse, the court reversed the defendant's conviction and sentence. At that time, La. C.C.P. art. 921, the harmless error statute, provided in pertinent part:
A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of ... is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right. (emphasis added)
The court found that the error as to the failure to recuse Judge Hawsey in that case constituted the denial of the statutory right provided by La.C.Cr.P. art. 671(A)(3). However, article 921 now provides simply that a judgment shall not be reversed because of any error "which does not affect the substantial rights of the accused," with the provision relied on by the Lemelle court noticeably absent. Thus, the denial of a statutory right no longer mandates reversal. Rather, reversal is required only where such a violation "affects" (prejudices) the substantial rights of the accused, and thus cannot be considered harmless error.
In State v. Wille, 595 So.2d 1149 (La. 1992), a death penalty case, the Louisiana Supreme Court held that it was error for a trial judge not to recuse himself pursuant to La.C.Cr.P. art. 671(A)(2) from a post-appeal evidentiary hearing over which he presided, after being called as a witness by the defendant. However, the court held that the error did not prejudice defendant, and thus was harmless.
As we have noted, the Lemelle court specifically rejected the notion that recusation pursuant to La.C.Cr.P. art. 671(A)(3) required a showing of bias, prejudice or personal interest on the part of the judge.
Article 671(A)(3) is not intended to apply to a situation where actual partiality exists, which is covered by article 671(A)(2). Defendant's argument herein is based on article 671(A)(3), which concerns merely the appearance of impartiality. There is no evidence that this defendant suffered any prejudice as a result of Judge Buras' failure to recuse herself. Unlike in Lemelle, wherein the judge represented the codefendant in the same cause he later presided over with the defendant, there is no evidence that Judge Buras had any personal involvement in defendant's cause. Although Judge Buras coincidentally was employed with the district attorney's office at the time the office was prosecuting defendant, she stated that she had no recollection of defendant or his case prior to assuming the bench.
Defendant pleaded guilty to a reduced charge as on the firearms count. Judge Buras did not rule on defendant's motion to suppress the evidence, or any matter important to defendant's guilt or innocence concerning the firearm charge. There is no indication that defendant would have faired better had Judge Buras been recused as to the firearm charge and a new judge appointed to accept defendant's guilty plea.
Accordingly, we conclude that the erroneous denial of defendant's motion to recuse Judge Buras was harmless error. Additionally, we find that Judge Pro Tempore Hangartner's and Judge Buras' failure to recuse themselves under La.C.Cr.P. art. 671(A)(3) was not an abuse of discretion *528 under the facts and circumstances of this case. There is no indication that either of the two judges was biased, prejudiced or had a personal interest in the case such that their impartiality could be called into question.

COUNSEL'S ASSIGNMENT OF ERROR NO. 3; PRO SE ASSIGNMENT OF ERROR NO. 3:
By these assignments, defendant claims that the trial court erred in denying his motion to quash the habitual offender bill of information, in finding him a third-felony habitual offender, and in sentencing him to an unconstitutionally excessive sentence.

Motion to Quash
The record contains a pro se written motion to quash the habitual offender bill of information, and defense counsel made an oral motion to quash prior to the start of the habitual offender hearing. The substance of defendant's written motion, as amplified by defense counsel's argument at the hearing, was that at the time defendant was convicted of the 1988 and 1993 predicate offenses, La. 15:529.1 did not provide, as it does now, for a life sentence in the case of a third-felony offender in his circumstances.[4]
Prior to 1994, the mandatory life sentence for third-felony offenders only applied when each of the two prior felonies involved violations of either R.S. 14:34, R.S. 14:62.1, R.S. 14:65, R.S. 14:110(B), or any crime punishable by imprisonment for more than twelve years. In 1994, La. R.S. 15:529.1(A)(1)(b) was amended to provide, in pertinent part:
(ii) If the third felony and each of the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In 1995, the statute was further amended to provide that only one of the two prior felonies had to meet the above criteria for enhancement of the sentence.
Defendant was sentenced as a third-felony habitual offender for his instant 1997 offense pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), as amended in 1995. His 1988 conviction was for possession of cocaine, and both his 1993 conviction and his conviction in the instant case were for possession of cocaine with intent to distribute, which latter offenses are "violation[s] of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years."
We reject defendant's ex post facto argument. In State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, the court stated:
For purposes of analyzing the ex post facto implications of repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, "the relevant `offense' is the current crime, not the predicate crime." *529 ... In State v. Williams, 358 So.2d 943 (La.1978), this Court therefore upheld the validity of La.R.S. 14:95.1, which prohibits possession of a firearm by a convicted felon, although the prior conviction at issue occurred before enactment of the statute. We observed that because the statute "prohibits specified future conduct," and "puts the defendant on notice of the consequences of his contemplated act," it did not "become an ex post facto law because liability was premised upon a first conviction." Id., 358 So.2d at 946 (emphasis in the original).
95-0347 at pp. 3-4, 662 So.2d at 448 (Citations omitted).
In Rolen, the defendant was convicted of a first offense DWI in April 1985. At that time, La. R.S. 14:98 provided for an enhanced sentence for second DWI offenders, unless the first offense had been committed more than five years prior to the commission of the second offense. The statute was amended, effective June 1993, to extend that "cleansing period" from five to ten years. The defendant was arrested for his second DWI offense in March 1994, one year after the statute was amended and nine years after his first DWI conviction. He was sentenced as a second offender. The defendant argued that the ex post facto provisions of the U.S. and Louisiana constitutions prohibited the application of the ten-year cleansing period. In rejecting that argument, the Court relied on jurisprudence that the only relevant offense for purposes of the ex post facto analysis was the current one. The Court reasoned that at the time of the defendant's arrest for his second DWI offense in March 1994, he had been "placed on notice by the state," by virtue of the 1993 amendment, that the definition of "prior conviction" in La. R.S. 14:98 had been changed, and that he could no longer rely on the five-year cleansing period.
The Rolen analysis has been applied by this court to the cleansing period in the Habitual Offender Law, La. R.S. 15:529.1, which has increased in recent years from five to seven, and from seven to ten years. See State v. Brady, 727 So.2d 1264, limited rehearing granted, (La.App. 4 Cir. 3/16/99); State v. Brinson, 97-1471 (La. App. 4 Cir. 9/3/97), 699 So.2d 510. By this analogy, the 1995 amendment of the Habitual Offender Law put the defendant on notice that, as a person with two prior felony convictions, he would be subject to life imprisonment if convicted of a future third felony offense in a particular category of offenses. As in Rolen, we conclude that the ex post facto clauses of the U.S. and Louisiana constitutions require no more.
Defendant argues that Rolen is distinguishable from the instant case because, under State v. Shelton, 621 So.2d 769 (La.1993), defendant has the burden of proving an irregularity in the taking of a prior guilty plea, and "is in the predicament of having to attempt to gather evidence relating to his guilty pleas nearly twenty years earlier" to establish such irregularity. We first note that defendant's prior convictions were in 1988 and 1993, and his habitual offender proceeding was in 1999, an eleven-year span at most. Defendant does not raise any issue pertaining to possible irregularities in the taking of his guilty plea in 1988, or his plea of nolo contendre in 1993. Nor does he raise any specific allegation that he was unable to marshal particular facts to address such issues. Defendant's argument that his case is distinguishable from Rolen is therefore not persuasive.

Lack of Proof of Prior Convictions
Defendant next argues that the State failed to establish his identity as the same *530 person previously convicted of the predicate offenses. Defense counsel argued at the habitual offender hearing that the absence of fingerprints on the two bills of information from the 1988 and 1993 offenses precluded a finding that defendant had previously been convicted of the offenses. Thus, the issue of identity was preserved for review.
Appellate counsel argues that proof of identity may not be established through the use of fingerprints on an arrest register, despite numerous decisions to the contrary.[5] To prove a defendant is a habitual offender under La. R.S. 15:529.1, the State is required to establish the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Anderson, 99-1407, p. 6 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, 325. Proof of identity can be established through a number of ways, such as the testimony of witnesses to prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record. State v. Isaac, 98-0182, p. 7 (La.App. 4 Cir. 11/17/99), 762 So.2d 25, 28-29, writ denied, 00-0239 (La.1/26/01), 781 So.2d 1255. It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can done through a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc. See: Anderson, supra, and Isaac, supra.
In the instant case, New Orleans Police Officer Glen Burmaster, qualified by the court as an expert in the taking, analysis and identification of fingerprints, testified that he took defendant's fingerprints in court on the day of the hearing. Officer Burmaster stated that he matched defendant's fingerprints to those on an arrest register from August 28, 1988, reflecting the arrest of Tyrone Williams, date of birth 1/27/58, of 1335 Sere Street, charging possession with intent to distribute one unit of crack cocaine, and possession of a firearm by a convicted felon. The bill of information, the docket master, the plea of guilty and waiver of constitutional rights form, and a minute entry in that case all confirm this information.
Officer Burmaster further testified that he matched defendant's fingerprints to those on an arrest register reflecting the March 23, 1993 arrest of Tyrone Williams, which contained the same date of birth and address, charging possession with intent to distribute sixty-four rocks of crack cocaine, and possession of one bag of cocaine. Again, the bill of information, and waiver of rights form confirm this information and reflect that Tyrone Williams pleaded nolo contendre to possession with intent to distribute cocaine on September 30, 1993. The docket master also shows that plea on that date.
This information is sufficient to establish that defendant in the instant case was the same person previously convicted in 1988 and in 1993. Because the fingerprints on the arrest register are sufficient, along with the other evidence, to establish defendant's identity as the person previously convicted, we reject appellate counsel's argument that La.C.Cr.P. art. 871, requiring *531 that a law enforcement officer affix the fingerprints of the convicted defendant to the bill of information, "sets forth the requirements to prove the identity of the person convicted."

Violation of Due Process and Right to Jury Trial
Appellate counsel also argues that La. R.S. 15:529.1 is unconstitutional because it deprived him of his due process rights and right to a jury trial. Statutes are presumed to be valid, and their constitutionality should be upheld whenever possible. State v. Muschkat, 96-2922, p. 4 (La.3/4/98), 706 So.2d 429, 432; State v. Hart, 96-0599, p. 2 (La.1/14/97), 687 So.2d 94, 95. The party challenging the constitutionality of the statute bears a heavy burden in proving the statute to be unconstitutional. State v. Chester, 97-2790, p. 8 (La.12/1/98), 724 So.2d 1276, 1282; State v. Wilson, 96-1392, p. 7 (La.12/13/96), 685 So.2d 1063, 1067.
Defendant first argues that La. R.S. 15:529.1 is unconstitutional because it allows the district attorney the discretion to invoke the sentence enhancement, thus giving the prosecutor, not the judiciary, the sentencing authority. Defendant further argues that this discretion makes it clear that the sentence enhancement is an additional offense or element of the offense. However, it is the trial judge who rules on the sufficiency of the evidence presented by the State, and the trial judge who imposes sentence. Defendant cites no authority for the proposition that this particular aspect of the sentence enhancement procedure provided for by La. R.S. 15:529.1 is unconstitutional for any reason. Further, a "charge" under a recidivism statute, such as La. R.S. 15:529.1, does not state a separate offense, but goes to punishment only. Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).
Defendant next argues that La. R.S. 15:529.1 impermissibly raises a "presumption of regularity" to proof beyond a reasonable doubt, because the defendant is presumed to be the same person convicted in the prior felonies unless he proves the contrary. In State v. Shelton, 621 So.2d 769 (La.1993), the Louisiana Supreme Court interpreted La. 15:529.1, stating:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
621 So.2d at 779-780 (Footnotes omitted).
In Parke, supra, the United States Supreme Court rejected the argument that a *532 defendant's 14th Amendment due process rights were violated by a virtually identical presumption of regularity provision in a Kentucky recidivist statute. Defendant cites no authority that the presumption of regularity in La. R.S. 15:529.1 renders the statute unconstitutional. We therefore reject defendant's argument that the presumption of regularity is unconstitutional in this case.
Mr. Williams' final argument is that La. R.S. 15:529.1 is unconstitutional because a defendant has no right to a jury trial on the issue of whether he is a habitual offender. Defendant has cited no authority holding that he has a constitutional right to a jury trial before being adjudicated a habitual offender/recidivist, and thus has not met his burden of proving La. R.S. 15:529.1 unconstitutional on that ground.

Unconstitutionally Excessive Sentence Cruel and Unusual Punishment
In these last two arguments on this assignment of error, defendant avers that his sentence is unconstitutionally excessive and constitutes cruel and unusual punishment.
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, supra, at pp. 5-6, 709 So.2d at 675; see also, State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. To rebut this presumption of constitutionality, the defendant must clearly show that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, supra, at p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Id. at p. 9, 709 So.2d at 677.
Defendant contends that he is not a recidivist, just a drug addict. He submits that the mandatory life sentence without the benefit or probation, parole or suspension for a third offender convicted of three drug offenses is unconstitutionally excessive, citing State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, in which this court vacated the life sentence of a fourth felony habitual offender as excessive.
The defendant in Burns was observed by police selling one rock of crack cocaine to a third person. When arrested, the defendant was in possession of two more rocks and fifty-seven dollars. Defendant testified at trial that he was addicted to cocaine. Noting that two of defendant's prior convictions were for possession of cocaine, this court concluded, "thus it is safe to assume he deals to support his habit," Id. at p. 9, 723 So.2d at 1019. The defendant was twenty-five years old, and this court felt that the defendant was "young enough to be rehabilitated." This court noted that a sentence less than life would "afford him the opportunity to partake in self-improvement classes while incarcerated *533 and the possibility of a productive future." Id. The defendant's father testified at trial, stating that the defendant was well liked in the community and would go out of his way to help anyone. Though recognizing that the fact that none of the defendant's felonies were non-violent alone was insufficient to override the legislatively designated sentences of the Habitual Offender Law, this court cited Johnson, supra, for the proposition that this fact should not be discounted. This court also noted that there were no allegations that the defendant ever possessed a dangerous weapon. Finally, the court noted that the defendant had difficulties with memory regarding time and place, attributing the problems to a previous gunshot wound to the head. The court also cited two economic impact considerations-that the defendant would never be a productive taxpayer in prison, and that life imprisonment imposes an undue burden on taxpayers of the state who must feed, house, and clothe the defendant for life, and provide geriatric care in later years.
However, in State v. Finch, 97-2060 (La. App. 4 Cir. 2/24/99), 730 So.2d 1020, this court declined to extend Burns to a case where there was no evidence that the defendant was driven by his addiction to sell drugs to support his drug habit, and where the record was devoid of any testimony suggesting that the defendant might possess any redeeming virtues. Similarly, in State v. Long, 97-2434 (La.App. 4 Cir. 8/26/99), 744 So.2d 143, writ denied, 99-2780 (La.3/17/00), 756 So.2d 1140, cert. denied, 531 U.S. 835, 121 S.Ct. 93, 148 L.Ed.2d 53 (2000), this court affirmed a mandatory life sentence imposed on a third-felony habitual offender convicted of distribution of marijuana and cocaine, who had prior convictions for distribution of false drugs and possession of cocaine. There was no evidence introduced at trial to indicate that defendant was addicted to drugs, as there had been in Burns, and the record revealed no testimony concerning any redeeming virtues the defendant might have possessed. The court held that the defendant had failed to meet his burden of showing by clear and convincing evidence that his sentence was unconstitutionally excessive, as required by Johnson, supra.
Unlike in Burns, at the time defendant in the instant case was sentenced, a charge of possession of a firearm by a convicted felon was pending against him. In addition, he had a prior arrest for the same weapons offense, which occurred at the same time as his 1988 drug arrest. Also, unlike in Burns, there is no evidence to substantiate defendant's claim of drug addiction other than his history of drug arrests. Det. Henry testified in the instant case that he witnessed defendant engage in approximately eleven drug transactions immediately prior to executing the search warrant. Defendant's instant conviction was based on four bags of powdered cocaine and two bags of crack cocaine recovered from his residence. Although defendant's 1988 arrest involved a single unit of cocaine, his 1993 arrest was for possession with intent to distribute sixty-four rocks of crack cocaine. Defendant received an eight-year prison sentence on September 30, 1993, and was arrested for the instant offense on November 18, 1997. It can therefore be assumed that defendant had been out of prison for only a brief time before he was rearrested for the instant offense. Moreover, there was no testimony as to any redeeming virtues possessed by defendant.
We therefore conclude that defendant has failed to show by clear and convincing evidence that because of unusual circumstances he is exceptional, or that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to *534 the culpability of the offender, the gravity of the offense, and the circumstances of the case. According to Johnson, supra, defendant has failed to rebut the presumption that the mandatory life sentence imposed on him as a third-felony habitual offender is unconstitutionally excessive.
Defendant also claims his sentence constitutes cruel and unusual punishment. La.C.Cr.P. art. 878 states:
A sentence shall not be set aside on the ground that it inflicts cruel and unusual punishment unless the statute under which it is imposed is found unconstitutional.
Article 878 is designed to preclude attacks on the nature and severity of sentences imposed unless the law upon which the conviction and/or sentence is based is found unconstitutional; this includes habitual offender sentences under La. 15:529.1. La.Code Crim. Pro. Ann. art. 878, Official revision Comment (West 1966). Defendant has failed to establish that any part of the Habitual Offender Law is unconstitutional. Thus, we reject his claim that his sentence pursuant thereto constitutes cruel and unusual punishment.

PRO SE ASSIGNMENT OF ERROR NUMBER 1:
In this pro se assignment of error, defendant claims that the trial court erred in admitting evidence of other crimes, specifically, a letter from the Department of Corrections that was seized from his residence. At the March 11, 1999 hearing on defendant's motion for a new trial, the trial court examined the list of six exhibits introduced by the State: S-1, the search warrant; S-2, a paper bag and its contents; S-3, two hundred and thirty-six dollars; S-4, cocaine; S-5, the revolver; and S-6, a lab report. The court found no letter listed. Trial counsel informed the court that he did not recall such a letter being introduced. However, during trial a prosecutor presented Det. Paul Toye with two pieces of documentation as part of exhibit S-2 to identify for the jury. Det. Toye simply stated that they were two pieces of documentation containing defendant's name and the address that he had recovered from a drawer of a dresser in the bedroom of the residence. There was no objection by defense counsel. When the evidence was introduced, S-2 in globo was said to contain, among other things, "the mail." Again, there was no objection by defense counsel. The record reflects that prior to closing arguments, the jury viewed the evidence.
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial pursuant to La.C.Cr.P. art. 771. However, a defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841(A); State v. Seals, 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373; State v. Spain, 99-1956, p. 11 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, 886. There was no contemporaneous objection to any testimony concerning the letters, or to the introduction of the letters. Therefore, defendant is precluded from raising this issue on appeal.

CONCLUSION
Accordingly, for the reasons stated, we affirm defendant's conviction and sentence.
AFFIRMED
NOTES
[1] After submitting his pro se brief, while this appeal was pending, Mr. Williams filed a document entitled "Supplemental Supervisory Writ." In it he claims the transcript he received is missing certain documents and requests that he be furnished with the listed documents and be allowed to file an additional brief. Having considered this as a motion to supplement the record on appeal, we deny the motion because the documents requested by defendant do not relate to any of his assignments of error, and therefore cannot properly be made part of the record on appeal. See La.Code Crim. Pro. art. 914.1.
[2] Article 674 states, in pertinent part: "The motion [to recuse the judge] shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment."
[3] State v. Williams, unpub, 99-1168 (La.App. 4 Cir. 5/26/99).
[4] Under the provision applicable in 1988 and 1993, La. R.S. 15:529.1(A)(2)(a), defendant could have been sentenced to not less that one-half, but not more than twice, the longest possible sentence prescribed for a first conviction of possession with intent to distribute cocaine. Because R.S. 40:967(B)(1) provides for a sentence of not less than five, nor more than thirty, years for possession with intent to distribute cocaine, defendant would have been subject to a sentence of fifteen to sixty years.
[5] See State v. Bazile, 99-2011 (La.App. 4 Cir. 4/26/00), 762 So.2d 106; State v. Wolfe, 99-0389 (La.App. 4 Cir. 4/19/00), 761 So.2d 596; State v. Anderson, 99-1407 (La.App. 4 Cir. 1/26/00), 753 So.2d 321; State v. Davis, 98-0731 (La.App. 4 Cir. 10/20/99), 745 So.2d 136; State v. Tucker, 95-0030 (La.App. 4 Cir. 9/18/96), 682 So.2d 261; State v. Rayford, 93-1386 (La.App. 4 Cir. 10/27/94), 644 So.2d 1133.