DANIEL L. DYSART, Judge.
11 Moses Tatten, Jr., appeals his conviction of purse snatching and his sentence to life imprisonment at hard labor as a fourth felony offender. For the following reasons, we affirm.
PROCEDURAL BACKGROUND:
Defendant, Moses Tatten, Jr., was charged by bill of information with purse snatching, a violation of La. R.S. 14:65.1. Following a jury trial, the defendant was found guilty as charged. The trial court ordered a pre-sentence investigation. The State filed a multiple bill of information, alleging defendant to be a quadruple offender. The defendant filed a motion for new trial, which was denied by the trial court, which then sentenced the defendant to serve twenty years at hard labor. On the same day, the trial court denied the defendant’s motion to quash the multiple bill of information, and the multiple bill hearing was held. The trial court adjudicated the defendant to be a quadruple offender, vacated the prior sentence, and resentenced the defendant to life imprisonment at hard labor.
The defendant’s motions for reconsideration of sentence and downward departure were denied.
| .FACTUAL BACKGROUND:
The testimony at trial provided overwhelming evidence of the defendant’s guilt. The testimony included that of the victim, who stated that the defendant attacked her in broad daylight while she was walking with a friend on Esplanade Avenue near its intersection with N. Claiborne Avenue. After the defendant knocked her to the ground, he grabbed her shoulder purse, which she carried across her body, and in *845 the process tore her brassiere in half. The victim’s friend corroborated her testimony.
The event was also witnessed by two Tulane University security police officers, who saw the defendant rip the purse from the victim and then be captured (along with the victim’s purse) by a man riding a bicycle. The two Tulane officers exited their vehicle and handcuffed the defendant who fought and resisted the officers to such an extent that they were forced to use pepper spray to subdue him.
The defendant took the stand in his own defense. His version of the events provided that while escaping from a robber himself, he accidentally ran into the victim, knocking her to the ground. The defendant’s account was not accepted by the jury, which voted 6-0 to convict. DISCUSSION[1]:
|sThe defendant does not assign as error any lack of evidence or mistake in the evaluation of evidence, but rather contends that the jury pool was tainted and that his adjudication as a quadruple offender and subsequent life sentence were improper. We address the defendant’s three assignments of error in the following parts.
1.
In his first assignment of error, the defendant contends that the trial court erred when it denied his motion for new trial, in which he argued that another district court judge’s comments to the potential jury venire were prejudicial and contributed to the jury’s verdict. The defendant’s motion is based upon a statement allegedly made by Judge Pittman during jury orientation that the jurors should remove their jury badges when they leave the courthouse so that they would not be approached by family members of the parties involved. None of the jurors in the present case brought this statement to the court’s attention during voir dire.
Defendant’s counsel became aware of the alleged statement because jurors in another case mentioned the statement during voir dire. Some jurors in that case, in which the defendant was charged with second degree murder, expressed concern about the statement. While most of the jurors felt that the statement was made for the jury’s safety, a few jurors felt that the statement was a warning made to prevent the jurors from being intimidated or influenced outside of the courtroom.
The trial court, in the present case, conducted a hearing on the motion for new trial and reviewed the transcript of the voir dire conducted in the other case. I/The trial court denied the motion for new trial, finding that the alleged statement did *846 not prejudicially affect the jurors and/or contribute to the verdict. The trial court found that there was no evidence of prejudice in the jury selected, stating that both the State and the defense were given as much time as needed to voir dire the potential jurors, and they conducted detailed voir dire of all potential jurors. None of the jury venire mentioned Judge Pittman’s alleged statement.
The decision on a motion for new trial rests within the sound discretion of the trial judge, and its ruling will not be disturbed on appeal absent a clear showing of abuse. State v. Quimby, 419 So.2d 951, 960 (La.1982). The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. As a general rule, a motion for new trial will be denied unless injustice has been done. La.Code Crim. Proc. art. 851; State v. Johnson, 08-1488, p. 17 (La.App. 4 Cir. 2/10/10), 33 So.3d 328, 338.
The trial court did not abuse its discretion when it denied the motion for new trial.
2.
In a second assignment of error, the defendant suggests that his adjudication as a multiple offender should be reversed. The defendant contends that he should have been charged through a bill of indictment because as a quadruple offender, he was subject to a sentence of life imprisonment, that he was entitled to have his multiple offender status determined by a jury, and that the State did not meet its burden of proving his prior convictions.
This Court has recognized on numerous occasions that a defendant, who has been alleged to be a multiple offender, is not entitled to be charged in a bill of | ¿indictment or to be tried by a jury. This Court addressed both issues in State v. Landfair, 10-1693 (La.App. 4 Cir. 7/20/11), 70 So.3d 1061.
This same argument has been asserted and found to be without merit multiple times by this Court. For example, in State v. Vincent, 2010-0764, pp. 9-10 (La.App. 4 Cir. 1/19/11), 56 So.3d 408, 414-15, this Court explained that[:]
[T]he Louisiana Constitution of 1974 does not require that the District Attorney institute proceedings by a bill of indictment where the maximum penalty for the charge is less than life imprisonment. The constitution mandates that prosecution of felonies be initiated by indictment or information applies only to the substantive crime for which the accused is charged. La. Const.1974, art. I, § 15; La.C.Cr.P. art. 382. In State v. Alexander, 325 So.2d 777, 779 (La.1976), quoting State v. Jackson, 298 So.2d 777 (La.1974), the Court reasoned that the “(bill of) information [charging the defendant as a multiple offender] does not charge a crime but is merely the method of informing the sentencing court of the circumstances and requesting an enhancement of penalty.” Thus, the enhanced penalty proceeding does not charge the defendant with a crime; consequently no indictment is necessary. Id. Moreover, the charging instrument is dependent upon the classification of the substantive crime charged, not the enhanced penalty to which an individual may be subject upon conviction. Id. In State v. Tassin, [20]08-0752, p. 9 (La.App. 3 Cir. 11/5/08), 998 So.2d 278, 285, writ denied [20]08-2909 (La.9/18/09), 17 So.3d 385, the defendant asserted that State v. Alexander needed to be reconsidered in light of U.S. v. Booker, 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621] (2005). The court reasoned that Booker was not applicable because it did not address a recidivism statute. Id. at 238 [125 S.Ct. 738]. Thus, the Tassin *847 court concluded that State v. Alexander was still “good law.”
⅜ ⅜ ⅜ ⅜
The appellant asserts next that under the Fourteenth and the Sixth Amendments to the U.S. Constitution, he was entitled to have a jury decide if he is a multiple offender. He argues that the United States Supreme Court cases of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Shepard v. U.S., 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), provide only that the bare existence of a prior conviction does not need to be determined by a jury. Anything else, such as the identity of a defendant as the person who was previously convicted, must be decided by a jury.
Again, the argument that a defendant is entitled to a jury trial in connection with a multiple offender proceeding pursuant to La. R.S. 15:529.1 has been rejected multiple times, including by this Court in Vincent, 2010-0764, pp. 10-11, 56 So.3d at 415; State v. Juengain, 2009-0425, p. 11 (La.App. 4 Cir. 1/20/10), 41 So.3d 499, 506-07; and State v. Smith, 2005-0375, pp. 3-5 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 839-840.
| State v. Landfair, 10-1693, pp. 5-6, 70 So.3d at 1065-1066.
The defendant also argues that the State did not prove his status as a quadruple offender because it failed to prove the validity of his guilty pleas. In State v. Shelton, 621 So.2d 769, 775 (La.1993), the Supreme Court stated that the “introduction of a transcript of the plea colloquy between the judge and the defendant which indicates that the plea was voluntary and which includes an articulated waiver of the three Boykin[2] rights would be sufficient to meet the State’s burden of proving through a contemporaneous record a guilty plea was taken in compliance with Boykin, and, indeed, is the method of proof preferred by this court.” However, the Court acknowledged that there were other methods of proving that a prior guilty plea was voluntary.
On the contrary, we have found a variety of modes of proof, other than only a “perfect” transcript, to be sufficient to meet the State’s burden of proof in a habitual offender hearing. The dominant thread running through the cases appears only to require that the court must determine from the entire record that the defendant was informed of and specifically waived his three Boy-kin rights. We have allowed a guilty plea form to supplement an “imperfect” transcript of the colloquy, i.e. one which reveals the judge and the defendant discussed a waiver of only some of the Boykin rights. For example, in State v. Dunn, 390 So.2d 525 (La.1980), this court found the record contained a sufficient affirmative showing of a knowing and express waiver where the record contained a transcript of the plea colloquy indicating an explicit waiver of two of the Boykin rights and a plea of guilty form signed by the defendant, his attorney, and the judge which contained an express waiver, initialed by defendant, of the third right. Likewise, in State v. Halsell, 403 So.2d 688, 690 (La.1981) (emphasis added), we noted that a “colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea.” Thus, even though the transcript of the colloquy revealed that the judge did not expressly obtain a waiver of defendant’s privilege against self-incrimination, we nevertheless found that [State ex. rel.] Jackson [v. Henderson]'s, [255 So.2d 85 *848 (La.1971) ] requirements were met where the written waiver of rights/plea of guilty form signed by defendant and his attorney stated that the attorney had informed defendant of his privilege against self-incrimination and that defendant had voluntarily waived it. See also State v. Washington, 406 So.2d 191 (La.1981).
|7In other cases, we have found a minute entry alone to be sufficient under [State v.] Lewis [367 So.2d 1155 (La.1979) ] and [State v.] Holden [375 So.2d 1372 (La.1979) ]. In State v. Bland, [419 So.2d 1227 (La.1982) ] supra, an habitual offender case, we found the State had affirmatively proven the defendant was fully informed of and voluntarily waived his three Boykin rights where the State introduced a minute entry which stated “the Court inquired of the defendant if he understood that by entering this plea he as [sic] waiving his right to trial by jury, waiving his rights against compulsory self-incrimination and waiving the right to be confronted by the witnesses against him. The defendant replied affirmatively.”
Most importantly, for our purposes, we have also held the State has met its burden of proving a prior guilty plea in a habitual offender hearing where it submitted a very general minute entry and a well-executed plea of guilty form. In State v. Tucker, 405 So.2d 506 (La.1981), defendant argued his sentencing as an habitual offender must be set aside due to the State’s failure to prove at the habitual offender hearing Boykinization of the prior guilty plea. At the hearing, the State submitted a copy of the minute entry (which indicated the judge “questioned the accused under oath regarding his plea of guilty”) and a copy of a plea form initialed several times by defendant, which stated defendant understood and waived his three Boykin rights. The form was also signed by defendant’s counsel and the trial judge. We held these two documents provided an affirmative showing in the record that the accused made a knowing and voluntary waiver of his rights.
We think that the minute entry concerning the abbreviated colloquy along with the well executed waiver of rights’ form signed by defendant, his attorney and the trial judge constitute a sufficient affirmative showing in the record that defendant knowingly and intelligently waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers.
State v. Shelton, 621 So.2d at 776-77.
In the multiple bill of information, the State alleged the defendant to be a quadruple offender based upon a guilty plea to attempted armed robbery on September 27, 1994; a conviction for possession of cocaine on August 2, 1995; and a guilty plea to possession of cocaine on August 12, 2009. The defendant contends that the State failed to prove the validity of his guilty pleas to attempted armed robbery and possession of cocaine.
At the multiple bill hearing, the State produced “certified packs” as to each offense. Included in the certified pack for the 1994 guilty plea for attempted armed robbery, in case 298-339, were the minute entry of September 27, 1994, and | swaiver of rights form executed by the defendant, defense counsel and the trial judge. The minute entry states that the trial court advised the defendant of his rights and interrogated defendant as to whether he understood his rights, and the defendant answered in the affirmative. The waiver of rights form specifically listed each of the defendant’s rights as well as the potential sentencing range. The defendant initialed *849 each right and the potential sentencing range. The form was signed by the defendant, defendant’s counsel and the trial judge. Pursuant to Shelton, the minute entry and waiver of rights form were sufficient to prove that the defendant’s guilty plea to attempted armed robbery was knowingly and voluntarily made.
The certified pack for the defendant’s guilty plea to possession of cocaine in case number 475-871 included the minute entry of August 12, 2009 and waiver of rights form signed by the defendant, defense counsel and the trial judge. The minute entry states that the trial court advised the defendant of his rights and interrogated defendant as to whether he understood his rights. The defendant acknowledged that he understood his rights and that he was waiving his rights. The waiver of rights form specifically listed each right and that the defendant was to be sentenced to one year at hard labor. The defendant placed his initials by each right and the acknowledgment of his sentence. The waiver of rights form was signed by the defendant, defense counsel and the trial judge. Again, pursuant to Shelton, these documents are sufficient to prove that the defendant’s guilty plea was knowingly and voluntarily made.
The defendant further contends that the State was unable to prove that ten years did not elapse between his two convictions for possession of cocaine, because the State did not prove when defendant’s sentence under the 1995 ^conviction expired. The State bears the burden of proving that the predicate convictions fall within the “cleansing period” prescribed by La. R.S. 15:529.1(0; State v. Brown, 598 So.2d 565, 575 (La.App. 4 Cir.1992); State v. Falgout, 575 So.2d 456, 457 (La.App. 4 Cir.1991). This ten-year “cleansing period” begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311, 314 (La.1977); State v. Thomas, 04-1341, p. 15 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 906. The Louisiana Supreme Court has stated that the expiration of a previous sentence is determined by the date of the actual discharge from supervision by the Department of Corrections. State ex rel. Wilson v. Maggio, 422 So.2d 1121, 1123 (La.1982); State v. Anderson, supra. “Discharge from supervision can take place earlier than the theoretical date on which the initial sentence would have terminated, because of a pardon, commutation, or good time credit. Or it can take place later because of parole revocation.” State ex rel. Wilson v. Maggio, 422 So.2d at 1123.
In Falgout, the State did not introduce any evidence showing the defendant’s date of release on the predicate offense. This Court considered the defendant’s eligibility for good time and parole in determining the defendant’s earliest release date from the predicate offense. The Court acknowledged that the defendant was not eligible for good time and would not have been eligible for parole until he had served at least one-third of his sentence. The Court stated:
Unlike [State v.] Nasworthy, [542 So.2d 715 (La.App. 4th Cir.1989) ] where the previous conviction was from Georgia and the release date was not apparent from the record, we find that although the State did not affirmatively establish that the time period has not elapsed, the record indicates “more probable than not” it had not elapsed. See State v. Turner, 365 So.2d 1352 (La.1978).
Falgout, 575 So.2d at 458.
| ,nIn Turner, the Louisiana Supreme Court reviewed the defendant’s claim that the evidence presented at his multiple offender hearing did not establish the date *850 of discharge from his prior conviction. The Court stated that while the record did not affirmatively establish that the time period had or had not elapsed, the showing indicates that more probably than not, the cleansing period had not elapsed between the crimes. Turner, 365 So.2d at 1355.
In this case, a review of the certified packs from case number 374-135 reveals that the defendant was arrested for possession of cocaine on December 7, 1994. The defendant was found guilty as charged by a jury on August 2, 1995. He pled guilty under a multiple bill of information on August 24, 1995, and was sentenced to five and one half years at hard labor. The defendant was arrested on December 23, 2006, for possession of cocaine, the offense charged in case number 475-871.
Under the multiple offender statute, La. R.S. 15:529.1(G), the sentence was imposed without benefit of probation or suspension of sentence. Further, as a multiple offender, the defendant was not entitled to good time, i.e., diminution of sentence, La. R.S. 15:571.3(C)(1), and would not have been eligible for parole until he had served at least one-half of his sentence. La. R.S. 15:574.4. While the defendant’s actual discharge date is not known, even assuming that the defendant was in jail from the time of his arrest on December 7, 1994, he would not have been discharged, at the earliest, until sometime in August or September, 1997. The defendant was arrested for possession of cocaine on December 23, 2006, within the ten year period. Just as the Supreme Court noted in Turner, while the record did not affirmatively establish that the time period had or had not elapsed, 1 uthe showing indicates that more probably than not it had not elapsed between the crimes.
The State met its burden of proving the validity of the guilty pleas and that the ten years cleansing period had not elapsed. The trial court did not err when it adjudicated the defendant to be a quadruple offender.
3.
In his last assignment, the defendant argues that his sentence under the multiple bill of information is unconstitutionally excessive. After it adjudicated the defendant to be a quadruple offender, the trial court sentenced the defendant to life imprisonment at hard labor. Pursuant to La. R.S. 15:529.1(A)(4)(a), the defendant was subject to a sentencing range from twenty years to life imprisonment.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. State v. Landry, 03-1671, p. 7 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239-40. A sentence may violate a defendant’s constitutional right against excessive punishment even if it is within the statutory limit. Id.; State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). A sentence within the statutory limit is constitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering. State v. Landry, 03-1671, p. 8, 871 So.2d at 1239-1240, citing State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Black, 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 892. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir. *851 1985). The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982). The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. Code Crim. Proc. art. 881.4(D).
In State v. Randell, 40,014 (La.App. 2 Cir. 9/21/05), 911 So.2d 393, the Second Circuit upheld the defendant’s sentence of life imprisonment under the multiple offender statute. The defendant had been convicted of purse snatching, and the State subsequently filed a multiple bill of information. In sentencing the defendant, the trial court noted that two of the prior convictions in the multiple bill were for simple robbery. The Second Circuit, in affirming, also noted that the trial court considered a pre-sentence investigation report and the facts of the case, and gave reasons, in which the trial court noted the defendant’s “lengthy criminal history,” which included “a variety of felonies.” Randell, 40,014, p. 4, 911 So.2d at 396.
In State v. Heard, 36,191 (La.App. 2 Cir. 7/17/02), 823 So.2d 454, the court affirmed imposition of a life sentence on the defendant, who was convicted of purse snatching and adjudicated a fourth felony offender under the multiple offender statute. The court noted that the defendant had prior convictions for first degree robbery and distribution of cocaine.
| isln the present case, the trial court ordered a pre-sentence investigation, which revealed numerous arrest and convictions. The trial court noted, during the sentencing hearing, that the defendant had over forty arrests, not including his juvenile record. The trial court recognized that in addition to the convictions listed in the multiple bill of information, the defendant had convictions for simple robbery, aggravated battery, attempted armed robbery, resisting an officer, second degree battery, battery of a police officer, possession of cocaine and possession of drug paraphernalia. The trial court also noted that the defendant showed no remorse for the present offense. The trial court stated that the defendant continued to deny in the pre-sentence investigation that he took the victim’s purse. The trial court considered the facts of the present case and the defendant’s extensive criminal record when it imposed the life sentence. Given the defendant’s extensive criminal history, which includes several crimes of violence, the sentence of life imprisonment as a fourth felony offender is supported by the record.
Accordingly, for the reasons set forth herein, the conviction and sentence are affirmed.
AFFIRMED

. A review of the record for errors patent reveals that the sentence the trial court imposed was illegally lenient. After adjudicating the defendant to be a quadruple offender, the trial court sentenced the defendant to life imprisonment at hard labor. However, La. R.S. 15:529.1 requires that the sentence must be imposed without the benefit of probation or suspension of sentence. La. R.S. 15:301.1(A) provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court.
Furthermore, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the Louisiana Supreme Court ruled that paragraph A of the statute self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the district court’s failure to specify that the defendant's sentence be served without benefit of probation or suspension of sentence. The correction is statutorily effected. State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).