STATE OF LOUISIANA     *     NO. 2025-KA-0533

VERSUS     *

JEREMY DILLION     *

    *

* * * * * * *

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 22-02022, "DIVISION A"
Honorable William M. McGoey
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson, Judge Karen K. Herman)

Ashton J. Licciardi
ASSISTANT DISTRICT ATTORNEY
ST. BERNARD PARISH DISTRICT ATTORNEY'S OFFICE
1101 West St. Bernard Highway
Chalmette, LA 70043

    COUNSEL FOR STATE OF LOUISIANA/APPELLEE


Sherry Watters
LOUISIANA APPEALS AND WRIT SERVICE
P. O. Box 58769
New Orleans, LA 70158

    COUNSEL FOR DEFENDANT/APPELLANT

AFFIRMED
MARCH 19, 2026

Jeremy Dillion ("Defendant") appeals the June 17, 2025 judgment adjudicating him as a quadruple felony offender, vacating the original sentence and resentencing Defendant to forty years on the felony conviction for home invasion, to run concurrent with the six-month sentence previously received on the misdemeanor conviction for simple battery.  For the following reasons, we affirm.

**PROCEDURAL HISTORY**

On March 8, 2023, a jury returned a unanimous verdict finding Defendant guilty of home invasion and guilty of the responsive verdict of simple battery,[1] violations of La. R.S. 14:62.8 and 14:35, respectively. On April 4, 2023, the district court imposed sentences of twenty-five years imprisonment at hard labor for his home invasion conviction and six months in parish prison for his simple battery conviction to run concurrently. This Court affirmed Defendant's convictions and sentences on appeal. *State v. Dillion*, 2023-0453, p. 1 (La. App. 4 Cir. 11/17/23), 377 So.3d 820, 822.

The State filed a habitual offender bill of information on April 4, 2023, charging Defendant as a quadruple offender with predicate convictions of first-

---

[1] Defendant was initially charged with sexual battery.

1

degree robbery in 2004; possession of a firearm by a felon in 2007; and simple burglary and simple burglary of an inhabited dwelling (in two separate cases) in 2018. On April 6, 2023, the judge recused himself from the multiple bill proceedings and the case was reallotted. Defendant appeared for arraignment on April 17, 2023 and entered a plea of not guilty. The State filed an amended multiple bill on May 23, 2023, adding a 2014 conviction for attempted use of an unauthorized motor vehicle.[2] On August 1, 2023, Defendant moved to recuse the judge to whom the case had been reallotted, which the judge granted on the ground that she was the presiding magistrate on duty in a case related to one of the convictions listed in the multiple bill.

Following multiple continuances, the district court held the habitual offender hearing on May 13, 2025, and took the matter under advisement. On June 17, 2025, the district court adjudicated Defendant as a quadruple felony offender; vacated his sentence of twenty-five years imprisonment for home invasion; and resentenced him to serve forty years imprisonment at hard labor. The district court noted that Defendant's sentence for simple battery "remains the same, it's six months parish prison," to run concurrently. Defendant's appeal followed.

**STATEMENT OF FACT**

At trial, the State presented the testimony of Cindy Kilcrease ("Ms. Kilcrease"), the criminal records supervisor with the Louisiana State Police, qualified by the district court as an expert in fingerprint identification.[3] Ms.

---

[2] It is unclear from the record before this Court on which date Defendant was arraigned on the amended multiple bill. Additionally, the facts of the underlying offenses are not pertinent to the issues raised on appeal.

[3] Ms. Kilcrease described her supervisory responsibilities as follows:

Kilcrease testified that she took the fingerprints of Defendant on the morning of the hearing[4] which matched the fingerprints associated with Defendant's June 16, 2004 guilty plea in East Baton Rouge Parish to first degree robbery;[5] Defendant's April 28, 2015 guilty plea in East Baton Rouge Parish to attempted unauthorized use of a motor vehicle;[6] his November 26, 2018 guilty plea in St. Bernard Parish (in case no. 18-02071) to simple burglary of an inhabited dwelling;[7] and his November 26, 2018 guilty plea in St. Bernard Parish (in case no. 18-01798) to a single count of simple burglary.[8] Ms. Kilcrease further testified that Defendant's state identification number, 002330651, and his birthdate, August 23, 1983, were reflected on all of the fingerprint cards produced following each arrest associated with the convictions listed above.[9] Defendant's birthdate was also listed on each bill of information associated with the above convictions, and the case numbers listed in the bills of information matched the corresponding court minutes reflecting Defendant's guilty pleas. Thus, Ms. Kilcrease concluded that Defendant

---

> I supervise a group of criminal records analysts. I am the custodian of records. I maintain and update fingerprint-based records for arrest and prosecution. I do daily verifications of incoming fingerprints, verify to existing fingerprints in our files, and I also testify in State and Federal court as to the conclusion of these fingerprint comparisons.

[4] The State introduced the contemporaneous fingerprint card.

[5] The State introduced a bill of information filed on October 31, 2003, charging Defendant with armed robbery and illegal carrying of a concealed firearm.

[6] The State introduced a bill of information filed on February 3, 2015, charging Defendant with the unauthorized use of a motor vehicle.

[7] The State introduced a bill of information filed on June 15, 2018, charging Defendant with one count each of simple burglary of an inhabited dwelling and simple burglary.

[8] The State introduced a bill of information filed on August 28, 2018, charging Defendant with simple burglary committed on February 16, 2018.

[9] Ms. Kilcrease testified that a state identification number is "assigned to an individual when the records are submitted for arrest or prosecution, or even application," and agreed that it is similar to a social security number in that it is assigned to a single, specific person.

was the same person reflected in each of the previous convictions introduced during the hearing.

On cross-examination, Ms. Kilcrease agreed that the fingerprints introduced by the State were taken following Defendant's 2018 conviction for simple burglary, while the other three fingerprint cards were completed when Defendant was arrested for the respective offenses rather than following his subsequent convictions. She explained that when examining fingerprints, she analyzes "pattern types," as well as "bifurcations, ending ridges, [and] various characteristics of the print itself," and that a minimum of "eight to ten" points of comparison would support a match. In this case, Ms. Kilcrease testified that she "stopped counting" when she located twenty-one points of comparison between the fingerprints associated with Defendant's 2018 conviction for simple burglary and the fingerprints she obtained from Defendant earlier that day.

On redirect examination, Ms. Kilcrease testified that each fingerprint card the State introduced for each of Defendant's prior convictions also contained a photograph of Defendant, further supporting her conclusion that Defendant was the same person identified in each of the records introduced at the hearing.

**ERRORS PATENT**

A review of the record reveals no errors patent.

**ASSIGNMENTS OF ERROR**

On appeal, Defendant asserts the following:

1. The State presented insufficient evidence to prove Defendant was a quadruple multiple offender, and the district court erred in imposing a sentence for Defendant's conviction for simple battery under the multiple offender statute.

4

2. Defendant was denied his constitutional rights to a speedy trial and to have a jury decide his multiple offender status.

3. The district court erred in imposing an excessive sentence.

**DISCUSSION**

Defendant first asserts that the State failed to prove his status as a fourth felony offender, arguing specifically that *attempted* unauthorized use of a motor vehicle (for which he was convicted in 2014) is not a valid offense because the existence or non-existence of permission cannot be "attempted." We find no merit in this assignment of error.

La. R.S. 15:529.1(D)(1)(b) provides:

> Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. *If the person claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor.* A person claiming that a conviction alleged in the information was obtained in violation of the constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence. (emphasis added).

Here, the record reflects that Defendant failed to file a written response to the habitual bill of information claiming that any of the predicate convictions were invalid as set forth above. Nevertheless, La. C.Cr.P. art. 815 provides that if the legislature has not specifically listed the valid responsive verdicts for an offense in Art. 814, the only valid responsive verdicts are guilty; "guilty of a lesser and

5

included grade of the offense even though the offense charged is a felony, and the lesser included offense a misdemeanor;" or not guilty. Furthermore, La. R.S. 14:27(C) provides that "[a]n attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears . . . that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt." Accordingly, the offense of attempted unauthorized use of a motor vehicle is a lesser grade of the offense of unauthorized use of a motor vehicle and, therefore, it is a valid responsive verdict.

In *State v. Vincent*, 2010-0764, p. 1 (La. App. 4 Cir. 1/19/11), 56 So.3d 408, 410, the defendant was charged with unauthorized use of a motor vehicle, and a jury found him guilty of the responsive verdict of attempted unauthorized use of a motor vehicle. This Court affirmed the defendant's conviction and habitual offender sentence. *Id.*, p. 16, 56 So.3d at 418. *See also State v. Coleman*, 2002-1487, p. 5 (La. App. 4 Cir. 10/9/02), 830 So.2d 341, 343 (finding "sufficient evidence to support the defendant's conviction for attempted unauthorized use of a motor vehicle."). Here, Defendant has not cited any authority holding that attempted unauthorized use of a motor vehicle is not a valid offense and thus could not qualify as a predicate conviction to enhance his sentence.

Defendant also asserts that the State failed to prove the value of the vehicle, arguing that the offense would constitute a misdemeanor if the vehicle was valued under $1,000 and, therefore, would not qualify as a predicate felony. However, the bill of information charging Defendant with unauthorized use of a motor vehicle alleged that the offense was committed in December of 2014, and the applicable statute in 2014 did not include the value of the vehicle as an element the State was

6

required to prove.[10] Subsection C of La. R.S. 14:68.4, which is contained in the current version of the statute, provides that "[w]hen the misappropriation or taking amounts to less than a value of one thousand dollars, the offender shall be imprisoned for not more than six months, or fined not more than one thousand dollars, or both." Subsection C was not added until 2022. *See* Acts 2022, No. 746, § 1. This argument is without merit.

Although Defendant next asserts that the State failed to prove that he was convicted in 2007 for being a felon in possession of a firearm as alleged in the multiple bill, it appears from the transcript of the proceeding that the State did not rely on that conviction to prove Defendant's status as a quadruple offender. Indeed, the State presented no testimony and introduced no exhibits at the hearing referencing that particular offense.

For the reasons set forth herein, we find that the State sufficiently proved that Defendant was convicted of each of the other four predicate felony offenses also listed in the amended multiple bill. Pursuant to La. R.S. 15:529.1(D)(2)(c), Defendant could be found to be a fourth felony offender "upon proof of three or more prior felony convictions." The fact that the State failed to prove the 2007 conviction is irrelevant to the district court's adjudication of Defendant as a forth felony offender.

---

[10] The 2014 version of La. R.S. 14:68.4 provided:

> A. Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.
>
> B. Whoever commits the crime of unauthorized use of a motor vehicle shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years or both.

Defendant next argues that the State failed to prove his identity as the person convicted in each of the prior offenses because the fingerprints matched to Defendant were taken from his respective arrests for the listed offenses rather than from fingerprints on the bills of information for the prior convictions. Additionally, Defendant relies on the fact that no testimony was elicited from anyone involved in any of the prior proceedings identifying Defendant as the person convicted.

"To prove a defendant is a habitual offender under La. R.S. 15:529.1, the State is required to establish the prior felony conviction and that the defendant is the same person convicted of that felony." *State v. Williams*, 2000-0011, p. 19 (La. App. 4 Cir. 5/9/01), 788 So.2d 515, 530 (*citing* S*tate v. Anderson*, 99-1407, p. 6 (La. App. 4 Cir. 1/26/00), 753 So.2d 321, 325). It is well established that "the Habitual Offender Act does not require the State to use a specific type of evidence to carry its burden at a habitual offender hearing. Rather, prior convictions may be proved by any competent evidence." *State v. White*, 2013-1525, p. 2 (La. 11/8/13), 130 So.3d 298, 300 (upholding a multiple offender adjudication where the State provided "sufficient competent evidence" to prove the convictions and the defendant's identity as the individual who committed the prior felonies) (internal citations omitted).

The Supreme Court has held that "[v]arious methods of proof establishing identity have been recognized as sufficient to sustain the state's burden of proof, including testimony of witnesses, expert opinion as to fingerprints, and photographs contained in duly authenticated records." *State v. Brown*, 2011-1656, p. 2 (La. 2/10/12), 82 So.3d 1232, 1234; *See also State v. Brazell*, 2017-0032, p. 22 (La. App. 4 Cir. 4/18/18), 245 So.3d 15, 34 ("Proof of identity can be established through a number of ways, including expert testimony matching the fingerprints of

8

the accused with those in the record of the prior proceeding.") (internal citation omitted).

In *Williams*, 2000-0011, p. 20, 788 So.2d at 530, this Court has also held:

> It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can [be] done through a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc.

In this case, Ms. Kilcrease, an expert in fingerprint comparison, matched Defendant's fingerprints taken the morning of the hearing with the fingerprints taken from each of his respective arrests for the offenses listed in the multiple bill. She testified that the information contained on the fingerprint cards, which included Defendant's birthdate, state identification number, physical description, and address, matched the information contained on each corresponding respective bill of information. Further, Ms. Kilcrease testified that the case numbers on each bill of information matched those listed on each corresponding, respective certified conviction document. Considering the above, we find that the State presented sufficient evidence for the district court to have found that Defendant was convicted of each of the predicate felonies listed in the habitual offender bill of information, (except, as discussed, felon in possession of a firearm).

Defendant further asserts that the State failed to prove that the "cleansing period" of five years did not lapse between the expiration of the terms of imprisonment for his 2004 conviction for first degree battery and his subsequent

conviction for unauthorized use of a motor vehicle.[11] Defendant further argues that because the State failed to prove the dates that Defendant was discharged from custody for any of his respective sentences, the State cannot prove that fewer than five years elapsed between his release from custody and any of the subsequent (respective) convictions.

La. R.S. 15:529.1(C)(1) provides pertinently:

> Except as provided in Paragraphs (2) and (3) of this Subsection, the current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than five years have elapsed between the date of the commission of the current offense or offenses and the date of the completion of sentence, probation, parole, or suspension of sentence for the previous conviction or convictions, or between the date of the completion of sentence, probation, parole, or suspension of sentence for each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses.

However, subsection (C)(2) of the statute provides a ten-year cleansing period following a conviction for a crime of violence as defined in La. R.S. 14:2(B). Here, La. R.S. 14:2(B) includes first degree robbery as a crime of violence. Thus, the cleansing period for that conviction would be ten years rather than five years following the expiration of that sentence.

In *State v. Robair*, 2013-0337, pp. 5-6 (La. App. 4 Cir. 1/15/14), 133 So.3d 96, 100, this Court stated that the cleansing period commences to run from the date the defendant is discharged from custody. We further noted that discharge "can take place earlier than the theoretical date on which the initial sentence would have terminated, because of a pardon, commutation, or good time credit. Or it can take

---

[11] A review of the hearing transcript reflects that Defendant did not raise the issue of whether the five-year cleansing period applies in this case, but appears to have conceded that the ten-year period is the appropriate cleansing period applicable here. Accordingly, the issue is not preserved for review.

place later because of parole revocation." *Id.*, p. 6, 133 So.3d at 101. (internal citations omitted).

In the present case, we note that the State failed to affirmatively establish the actual dates that Defendant was released from custody for any of his respective convictions. In *State v. Turner*, 365 So.2d 1352, 1355 (La. 1978), the Court addressed a similar claim that the State failed to present evidence of the defendant's release dates from incarceration. Therein, the Supreme Court held:

> [w]hile the record does not affirmatively establish that the five years [cleansing period] had or had not elapsed, the showing indicates that more probably than not it had not elapsed between the crimes. If, in fact, [the defendant] is able to show that the five years had elapsed, then he can secure appropriate relief upon postconviction proceedings.

*See also Robair*, 2013-0337, pp. 6-7, 133 So.3d at 101; *State v. Tatten*, 2012-0443, pp. 10-11 (La. App. 4 Cir. 5/1/13), 116 So.3d 843, 849-50 (applying the principles set forth in *Turner* to determine whether the cleansing period had expired when the State failed to prove the date the defendant was discharged from custody for the predicate conviction).

Similarly, in *State v. Kisack*, 2016-0797, p. 6 (La. 10/18/17), 236 So.3d 1201, 1205, the State failed to establish the date the defendant was released from federal custody on the predicate conviction. The Supreme Court held the following:

> Defendant was convicted of possessing contraband in a penal institution between October 11, 2011 and December 26, 2011. The State established at the habitual offender adjudication that defendant pleaded guilty on February 7, 2001, in federal court to the charge of felon in possession of a firearm and was sentenced to 96 months imprisonment in a federal facility plus three years of supervised release. The potential that defendant could have received an early release before October 11, 2001, and also been relieved of his probation obligation by

11

receiving an executive pardon does not suffice to establish a reasonable doubt.

Here, Defendant was convicted of first-degree robbery (noted above as a crime of violence) on June 16, 2004, and was sentenced to serve three years at hard labor with credit for time served. The date of Defendant's arrest was listed on the bill of information as June 29, 2003, and it is unknown whether Defendant remained in custody from the date of his arrest until conviction. Even assuming Defendant received nearly a full year of credit for time served, roughly two years of his sentence would have remained following his conviction. Because Defendant committed attempted unauthorized use of a motor vehicle on December 9, 2014, it is unlikely (if not impossible) that more than ten years elapsed following his release from custody for first degree robbery before he committed another felony offense.

Similarly, Defendant was convicted of attempted unauthorized use of a motor vehicle on April 28, 2015, and was sentenced to serve one year at hard labor with credit for time served. Defendant was subsequently charged with simple burglary of an inhabited dwelling on April 26, 2018, only three years after he was convicted of attempted unauthorized use of a motor vehicle. Thus, even if Defendant was released from custody immediately after his conviction, it would not appear possible for five years to have elapsed before he committed another felony offense. Likewise, because Defendant was convicted of simple burglary of an inhabited dwelling on November 26, 2018, and sentenced to serve twelve years imprisonment at hard labor (and was also convicted and sentenced to concurrently serve twelve years imprisonment at hard labor on that date for simple burglary in a

separate case), the five-year cleansing period could not have elapsed by the time Defendant committed home invasion less than four years later on June 21, 2022.

In sum, we find that the State presented sufficient evidence for the district court to find Defendant a fourth felony offender.[12] This assignment of error is without merit.

In his second assignment of error, Defendant asserts that his right to a speedy trial was violated when his multiple bill hearing was held two years after the State filed the bill charging him as a fourth felony offender. Defendant also asserts that he was denied his constitutional right to have his recidivist status determined by a jury.

Defendant concedes that "[t]he multiple bill was filed timely, as it was filed on the date of the original sentence and was amended only one month later." The crux of Defendant's argument here is that the hearing on the multiple bill was unreasonably delayed.[13]

"The determination of whether the [multiple bill] hearing is held within a reasonable time hinges on the facts and circumstances of the specific case," and "there is no reason for this court to jurisprudentially provide a bright line deadline by which the habitual offender proceeding must be completed." *State v. Muhammad*, 2003-2991, pp. 14-17 (La. 5/25/04), 875 So.2d 45, 55-56. (internal citation omitted). While "neither definitive nor dispositive in the context of a

---

[12] Even if the State failed to prove that the ten-year cleansing period had not expired following Defendant's first predicate conviction for first degree battery, it nevertheless proved that the other three felony convictions were valid predicate convictions that occurred within the respective, applicable cleansing periods such that the district court still could have found Defendant to be a quadruple felony offender.

[13] Most of the cases to which Defendant cites deal with an unreasonable delay in *filing* the multiple bill, especially where the Defendant had already been released from custody after serving the entirety of the underlying sentence prior to the filing of the multiple bill. These circumstances are not present in this case.

13

habitual offender proceeding," the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 531-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972) to determine whether speedy trial rights have been violated "are instructive." *Muhammad*, 2003-2991, pp. 14-15, 875 So.2d at 55. "Those factors are the length of the delay, the reasons for the delay, the accused's assertion of his right to speedy trial, and the prejudice to the accused resulting from the delay." *Id*.

Of the four factors, Defendant addresses only two in his brief to this Court, stating inaccurately that only one continuance was attributable to Defendant while the balance of the delay was the fault of the State, and that he was prejudiced by not knowing his final sentence for two years after the multiple bill was filed.

In *State v. Buckley*, 2011-0369, p. 7 (La. App. 4 Cir. 12/27/11), 88 So.3d 482, 487, this Court found that the two-and-a-half-year delay in the multiple offender hearing was not unreasonable and did not warrant relief where "the State significantly delayed the filing of the multiple bill of information for purposes of receiving additional documentation," noting that "the multiple bill hearing was continued numerous times on the motions of both the State and defense, as well as by the court itself."[14] Additionally, we noted that Mr. Buckley was informed at his original sentencing that the State would file the multiple bill. *Id.*

In this case, just as in *Buckley*, a review of the transcripts of the proceedings held on the multiple bill reveals that the hearing was continued approximately fifteen times by both parties for various reasons, and at least twice due to the recusal of the presiding judge. Defendant was not transported to court on roughly six occasions and defense counsel was absent at least twice, while the presiding

---

[14] Specifically, in *Buckley*, the hearing was continued twice because of jury trials in progress, three times because the court was not in session, and five times because the Defendant was not transported to court. 2011-0369, pp. 1-4, 88 So.3d at 484-85.

judge was absent on another occasion. Although the State was responsible for the remaining continuances, it stated several times that its expert witness was unavailable to testify on several occasions. Defendant does not argue that the delay caused by the state was either vindictive or in bad faith.

Although Defendant lodged several objections to the continuances based on the delay, the record does not reflect that Defendant expressly asserted his speedy trial right. Additionally, other than remaining unaware of his final sentence, Defendant points to no prejudice stemming from the two-year delay in the multiple bill hearing, especially where he was serving a twenty-five-year sentence for home invasion imposed only two years earlier. Considering the above, we find that Defendant has not demonstrated his entitlement to relief on this claim.

Defendant next asserts that he was denied his constitutional right to have his multiple offender status decided by a jury, arguing that any factor that increases a sentence beyond the statutory maximum must be decided by a jury. The record before us demonstrates that Defendant failed to preserve his due process argument below.

As this Court explained in *Chaumont v. City of New Orleans*, 2020-0017, p. 5 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 45-6:

> It is well settled that appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed. *Council of City of New Orleans v. Washington*, 2009-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856. The longstanding jurisprudential rule of law in Louisiana is that litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specifically pleaded and the grounds for the claim particularized. *Id.* 2009-1067, p. 4, 9 So. 3d. at 857 (citing *Mosing v. Domas*, 2002-0012 (La. 10/15/02), 830 So.2d 967; *Vallo v. Gayle Oil Co.*, 1994-1238 (La. 11/30/94), 646 So.2d 859). "The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute."

*Id*. (*citing State v. Hatton*, 2007-2377, p. 14 (La. 7/1/08), 985 So.2d 709, 719).

*See also Hardy v. Juvenile Justice Intervention Center*, 2021-0715, p. 5 (La. App. 4 Cir. 6/15/22), 342 So.3d 1076, 1080.

Because Defendant did not raise the issue of a right to a jury trial for his multiple offender hearing, he is not entitled to raise the issue on appeal. Accordingly, we pretermit discussion on this assignment of error.[15]

Finally, in his third assignment of error, Defendant argues that his sentence is "indeterminate" because the district court did not specify under which subsection of the statute it was imposing the sentence. Defendant argues that the district court did not expressly state which, if any, of the offenses it found to be crimes of violence. Thus, Defendant argues that he could have been sentenced pursuant to either La. R.S. 15:529.1(A)(4)(a) or (4)(b), depending on whether the district court found his fourth felony to be a crime of violence.[16] Defendant also argues that the district court erred in failing to consider the sentencing factors set forth in La. C.Cr.P. art. 894.1, and his sentence is therefore constitutionally excessive.

The State asserts that Defendant failed to preserve these claims for review as he never raised them in the district court at any time, and did not file a motion to reconsider sentence or argue that his sentence was excessive.

La. C.Cr.P. art. 881.1(E) provides:

---

[15] Regardless, it is well-established that "a defendant is not entitled to a jury trial in connection with a multiple offender proceeding under La. R.S. 15:529.1." *Robair*, 2013-0337, p. 4, n.2, 133 So.3d at 100, (citing *Tatten*, 2012-0443, p. 5 ,116 So.3d 843 at 849-50; *State v. Landfair*, 2010-1693, pp. 5-6 (La. App. 4 Cir. 7/20/11), 70 So.3d 1061, 1065-66).

[16] Defendant also asserts that the district court may have imposed his sentence of the misdemeanor simple battery conviction under the multiple offender statute. However, as noted above, the district court expressly stated that the six-month sentence on that conviction would remain the same. Accordingly, it does not appear that the district court vacated Defendant's original sentence and re-sentenced him under the multiple offender statute.

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

When a defendant fails to object and file a motion to reconsider his sentence, appellate review is "limited to a bare review for constitutional excessiveness." *State v Banks*, 2023-0806, p. 5 (La. App. 4 Cir. 5/24/24), 391 So.3d 24, 28 (citing *State v. Manuel*, 2021-0273, p. 14 (La. App. 4 Cir. 4/6/22), 337 So.3d 967, 974-75). Therefore, our review of Defendant's sentence is briefly analyzed below.

The imposition of excessive sentences is prohibited by Article I, § 20 of the Louisiana Constitution. Additionally, "[t]he Eighth Amendment to the Constitution prohibits cruel and unusual punishments, including not just barbaric punishments, but also those that are disproportionate to the crime committed." *State v. Ferguson*, 2019-01247, p. 2 (La. 12/22/20), 307 So.3d 198 (internal citations omitted).

La. R.S. 15:529.1(A)(4)(a) provides:

> [i]f the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then . . . [t]he person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.

Additionally, subsection (4)(b) pertinently provides:

> [i]f the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B)…the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

In the present case, the district court did not state whether it found any of Defendant's offenses to be crimes of violence. Rather it ruled as follows:

17

> Okay, so I find that the State met its burden for proving the predicate offenses for this quad bill and that he committed the predicate offenses within the time limits required by law. The offenses are felonies, and so, therefore, I am going to sentence him under the Multiple Bill statute. On the home invasion to [forty] years Department of Corrections time; the simple battery conviction remains the same, it's six months parish prison. They will run concurrently and I'm giving credit for time served.

The district court subsequently agreed that it intended to vacate Defendant's original sentence of twenty-five years for the home invasion conviction and re-sentence him to serve forty years imprisonment at hard labor. Notwithstanding that both the conviction for home invasion and the predicate conviction for first degree robbery are considered crimes of violence pursuant to La. R.S. 14:2, the district court failed to specify whether it was considering them a crime of violence for enhancement purposes under La. R.S. 15:529.1. Accordingly, it is unclear under which provision the district court imposed the sentence.

La. R.S. 14:62.8 provides that "[w]hoever commits the crime of home invasion shall be fined not more than five thousand dollars and shall be imprisoned at hard labor for not less than one year and not more than thirty years." La. R.S. 15:529.1(A)(4)(a) provides that the fourth felony conviction carries a sentence of "not less than the longest prescribed for a first conviction," which in this case is thirty years, and "not more than his natural life," and does not depend on a finding that any of the felonies constitute a crime of violence. Defendant's sentence of forty years at hard labor falls within the parameters of the sentencing statute.

Subsection (4)(b) provides that when none of the convictions are found to be crimes of violence, the sentence shall be "not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction," which in this

case would be sixty years imprisonment at hard labor. Defendant's sentence of forty years at hard labor also falls squarely within these discretionary statutory bounds. Because the district court did not specify whether it found any of the felonies to be crimes of violence, and Defendant's sentence falls within the boundaries of both subsections, the district court would have been within its discretion to impose the sentence under either provision. Accordingly, Defendant fails to show that the district court erred in imposing his sentence, notwithstanding its failure to expressly state its findings on the record.

Defendant further asserts that the district court erred in failing to state on the record whether it considered any of the factors set forth in La. C.Cr.P. art. 894.1 when imposing his sentence. Defendant argues that the absence in the record of the reasons for enhancing Defendant's original twenty-five-year sentence to a forty-year sentence renders Defendant's sentence under the multiple offender statute constitutionally excessive.

As this Court stated in *Williams*, 2000-0011, pp. 23-24, 788 So.2d at 532:

> Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. *State v. Johnson*, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; *State v. Dorthey*, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. *Johnson, supra*, at pp. 5-6, 709 So.2d at 675; *see also*, *State v. Young*, 94-1636, p. 5 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 527. To rebut this presumption of constitutionality, the defendant must clearly show that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that

19

> are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. *Johnson, supra*, at p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." *Id.* at p. 9, 709 So.2d at 677.

As noted above, on its face, the statutes pursuant to which Defendant was sentenced provided a sentencing range of thirty years imprisonment at hard labor to a life sentence. Consequently, the district court could not have legally re-imposed the twenty-five-year sentence unless it determined that a greater term would punish him excessively. Defendant has failed in this case to "clearly show that he is exceptional," or otherwise rebut the presumption that his legal sentence is constitutional. The district court imposed a sentence only ten years above the statutory minimum sentence of thirty years, which is significantly less than the statutory maximum sentence of life. Accordingly, Defendant's sentence is not constitutionally excessive, and Defendant has failed to demonstrate that he is entitled to relief on this claim.

## DECREE

For the reasons set forth above, we affirm Defendant's sentence pursuant to the multiple offender laws.

**AFFIRMED**

20